Edward Leroy BISHOP, Appellant

v.

The STATE of Oklahoma, Appellee.

No. F–78–173.

Court of Criminal Appeals of Oklahoma.

Oct. 17, 1979.

Rehearing Denied Nov. 6, 1979.

Selby, Connor & Coyle, Christopher L. Coyle, Bartlesville, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Edward Leroy Bishop, hereinafter designated the defendant, was convicted of Unlawful Possession of Narcotics With Intent to Distribute in the District Court, Washington County, in Case No. CRF–77–108. His punishment was set at two (2) years' imprisonment. Inasmuch as defendant's assignments of error relate to the search and seizure, no summary of the testimony presented at the trial is necessary.

The defendant asserts in the first assignment of error that the trial court erred in failing to sustain his motions to suppress all evidence and testimony which resulted from his arrest and the search of his person, vehicle and home. He complains that the affidavits upon which the search warrants were issued did not contain substantive information to show that contraband could be located at the place directed in each of the search warrants, that the warrants contained "stale" information, and that the information in the warrants was based on hearsay from informants without giving any indication of the reliability of the informants.

■ The affidavits for the separate warrants are identical in their allegations.[1]

1. The affidavits for the search warrant on the defendant's person read as follows:

"Chief Gary Epps, Affiant, being first duly sworn, on oath deposes and says that the following property constitutes evidence of the commission of a crime:

"Marihuana

"A United States $10.00 bill, Serial No. J72269727A and that the above mentioned property is now located as follows:

"The person of one Edward Leroy Bishop, dob 11/26/57

"1.   That I am the Chief of Police in the City of Dewey, Oklahoma.

2.   That on May 6, 1977, I spoke with a Edward Leon Jacobson, 328 East 6th Street, Dewey, Jacobson said that on Saturday, April 30, 1977 he and one Joseph Sidney Swift, Jr., a/k/a 'Sonny' stole a .357 Magnum revolver from his uncle Phil Van Beber, from his uncle's residence on 1536 South Colorado, Bartlesville. Jacobson said that later that Saturday, Swift took the gun to one Edward Leroy Bishop's house, located just outside Dewey city limits on 205 W. 9th, Dewey. Jacobson stayed sitting in a car in the driveway at 901 N. Ross, Dewey while Swift went to Bishop's house. Swift then came back alone and got Jacobson and they both went to Bishop's house. Bishop was holding the stolen gun in his living room. Jacobson advised Bishop that the gun was 'hot' and Swift stated they would sell Bishop the gun for $50.00. Bishop stated he would buy it for $50.00 and take the $10.00 Jacobson owed him out of it and pay them $40.00 for it. Jacobson agreed and Bishop said he would have to go get the $40.00. Jacobson said while there he observed several bags of marihuana laying on the couch in the living room and that Bishop offered to sell him a couple of bags of the marihuana, which they declined. Bishop also asked them if they wanted to buy some 'speed.' Jacobson and Swift left, leaving the gun in Bishop's house and went back over to Swift's house, which is directly across Ross street from the side of Bishop's house. Jacobson and Swift saw Bishop leave in his pickup. Bishop came back about 30 minutes later and said he didn't have the money. Swift said he wanted the gun back and Bishop left again. About one and one-half hours later Bishop came with the money and gave Swift $40.00 in Swift's front yard. Jacobson received $15.00 of it that same Saturday night.

3.   Jacobson further advised me that he has purchased marihuana from Bishop on approximately three different occasions in the past year and that Bishop on these occasions had produced the marihuana from the van he had previously owned.

4.   That on March 2, 1976 Jacobson pleaded guilty to Burglary Second Degree in the District Court of Washington County and is still on probation under that charge. Jacobson received a two (2) year sentence with all but six (6) months suspended at that time. Also, Jacobson's rules and conditions of probation prohibit him from owning or being in possession of a firearm.

5.   That on May 5, 1977 I picked up Jacobson at his house in Dewey at approximately 8:30 P.M. I and Detective Jim Winn and Detective Dennis Nix of the Bartlesville Police Department searched Jacobson's person and determined that he had no contraband anywhere on his person. I gave Jacobson two (2) $10.00 bills which I recorded the serial numbers of. We went to behind City Hall in Dewey and thirty minutes later Jacobson came back and said that Robert O'Neil, who is Bishop's stepbrother, told Jacobson that Bishop was looking for Jacobson and that Bishop had just sold O'Neil and a Steve Ketchum a bag of marihuana. Jacobson said he observed O'Neil & Ketchum (who is Jacobson's cousin) smoking marihuana behind Candy's at the time O'Neil made these statements.

Clearly they contain sufficient information to support a finding of probable cause that contraband was located at the place directed in each of the search warrants.

Later that evening we took Jacobson back over to Candy's Winn and Nix went down to one side of the alley behind Candy's and I went to the other side of the alley and Jacobson went through the front door of Candy's and out back to the alley. Jacobson said that in the alley behind Candy's he got into Bishop's blue Chevy pickup, which is described above. Jacobson says that he got into the passenger's side and that Bishop was in the driver's seat of the pickup, which was parked in the alley. Jacobson said that a Larry Lucas was sitting in the middle, rolling a joint of marihuana. Bishop asked Jacobson if he had sold another stolen gun, a .22 pistol which Jacobson had also stolen from his uncle and which Jacobson had tried to sell to Bishop earlier, also advising Bishop at that time that this gun was also 'hot.' Jacobson said that he had sold the stolen gun for $55.00. Bishop said he, Bishop could have made an extra $5.00 because he knew someone who would buy it. Jacobson asked Bishop if he had any bags and Bishop said yes he had some bags. Jacobson said he wanted to buy one and Bishop reached behind the seat and pulled a bag of marihuana out. Bishop took another bag out of his pocket—took what appeared to be marihuana out of it and put his substance into the bag of marihuana he had gotten behind the seat. Bishop then put the bag back into his shirt pocket and sold Jacobson the bag he had gotten from under the seat for $10.00. Jacobson paid him with one of the $10.00 bills I had given him. Jacobson says he put the bag of marihuana down the front of his pants. Jacobson said he went back into Candy's and waited in front of Candy's until I came by and motioned to Jacobson. Jacobson met me back at my car which was parked in an alley across the street from Candy's. When Jacobson got into the car he produced a bag of marihuana from the front of his pants and gave me back one of the $10.00 bills. The $10.00 bill which he had given Bishop was a United States $10.00 bill, serial # J72269727A. We then took Jacobson to my house where Detective Winn searched Jacobson and found no other currency or contraband.

7. That I have personally observed Bishop drive the above described blue pickup on many occasions in and around Dewey. I have personally checked with the Bartlesville Police Department and verified that Bishop is the owner of said vehicle, which is a ¾ ton, 1975 Chevrolet pickup truck with 1977 Oklahoma license plate # 581311, VIN # CC4 245J122082.

8. That on May 6, 1977 I read a police report made out by Officer Cecil Landrum of the Bartlesville Police Department. This report states that on May 4, 1977, the said Phil Van Beber, uncle of Jacobson reported that on May 4, 1977 Van Beber discovered two of his guns missing from his residence on 1536 So. Colorado, Bartlesville. The guns are described as a Colt .22 automatic, serial # 109102 and a Smith & Wesson .357 Magnum, Model 27 with a 6″ barrel, serial no. 5–267893. Van Beber said that Jacobson and the said Joe Swift had been doing some work for him at his residence on last Friday, Saturday and Monday. The report also states that a Geary W. Rickman, a gunsmith whose business address is 1205 West Frank Phillips Boulevard, Bartlesville, advised Landrum that Swift and Jacobson had sold him the .22 on May 3, 1977 for $55.00. Rickman showed Landrum the receipt for the sale of the gun signed by Swift.

9. That Bishop resides with his mother, Mary Bishop, who owns the residence at 205 West 9th Street, which is just north of 9th Street, which is the north boundary of the Dewey city limits.

10. That I have also spoken with the said Joseph Sidney Swift, Jr., regarding the said transaction at Bishop's. Swift states that he also saw marihuana on the said couch and states that the agreement between Bishop and Jacobson for the sale of the said stolen gun was made in Bishop's house. Swift says that Bishop agreed to pay $50.00 for the gun. Bishop kept the gun. Later on Saturday Bishop returned in his pickup to Bishop's house, then walked over to Swift's house, located at 901 North Ross in Dewey, where Swift and Jacobson were. Bishop stated that Jacobson owed him $10.00 and that Jacobson would have to wait for his money. Swift said that he, Swift, would have to have the money now and Bishop left and went back to his house. Bishop's house is located right across Ross street from Swift's house. Swift says he observed Bishop come out of the back door of Bishop's house and came up to Swift's house and gave Swift $40.00 for the gun."

"That I, John G. Lanning, am the District Attorney of the Eleventh Judicial District including Washington County, Oklahoma. That I am acquainted with Edward Leroy Bishop who was convicted on September 23, 1975, Case No. CRM–75–590, for the offense of Outraging Public Decency and received a sentence of one (1) year in the County Jail. I am aware that this offense actually involved the theft of bedroom furniture.

"Further, I am aware the same Edward Leroy Bishop is presently on probation from Osage County, Oklahoma for the offense of Robbery With Firearms having been placed on a two (2) year deferred sentence on September 5,

■ The information contained in the affidavits was not so stale as to be unreliable. Jacobson and Swift observed marijuana in the defendant's residence on April 30, and six days later defendant sold a baggie of marijuana to Jacobson. The affidavits for search warrants we're presented to the magistrate the following day. Based upon the totality of the circumstances, we are of the opinion that the magistrate had probable cause to believe that contraband was still in the possession of defendant.

■ Finally, it was not necessary for the affidavits to give detailed information pertaining to the reliability of the informants, because they were named. The situation here presented is similar to that presented in *Luker v. State*, Okl.Cr., 504 P.2d 1238 (1973), and, in accordance with the views expressed therein, we find this contention to be without merit. It is with undisclosed informants that some indicia of reliability are required. *Luker v. State*, Okl.Cr., 504 P.2d 1238 (1973).

The defendant also contends in his first assignment of error that he was illegally arrested and that the evidence seized as a result of that arrest should be suppressed. This argument is premised on the assumption that the search warrants were invalid, because the 'illegal arrest' to which the defendant refers was actually the service of the warrants upon him. Since we have upheld the warrants, this argument is without merit.

■ In addition to these arguments, the defendant in his first assignment of error complains that when he presented his motion to suppress to the District Court, the court refused to accept an offer of proof made by the defendant. In his brief he says he offered to the court a statement by one of the informants that the informant had lied to the affiant because of police pressure. This "statement" is undated and unsworn, and is witnessed by the defendant's mother, step-brother and girlfriend. We agree with the trial court's finding that this did not constitute a sufficient "substantial preliminary showing," that a false statement was made, so as to require a hearing. See *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ The defendant urges in the final assignment of error that the trial court erred in refusing to grant a mistrial when Chief Epps testified as to the commission of another crime by the defendant. The alleged improper response appears in the record as follows:

"All right. And were [the items seized] removed at any time from that evidence locker?

"A. Yes, sir, they have been removed twice by myself. Once to be brought down here to the courthouse for a hearing, and another time for one item to be identified by who we thought to be a possible owner of that item." [Tr. 43].

We find this statement to be relatively innocuous and, in the context of the trial,

---

1975 which is due to expire on September 5, 1977 which probation precludes the Possession of Firearms.

"Further, I am aware that the same Edward Leroy Bishop was prominently mentioned in an Unlawful Delivery of Marihuana case as testified to in a Preliminary Hearing held on June 15, 1976 in the case of the State of Oklahoma vs. Michael Wayne Edens which is Case No. CRF–76–249. In that case which involved a sale of marihuana to the State Agent, Edward Leroy Bishop was present when the delivery was made to the State Agent and a short time prior to this delivery the State Agent had been told that a pound of marihuana had been sold to Edward Leroy Bishop and Edward Leroy Bishop had been called on the telephone, according to testimo-

ny, to bring the marihuana to the apartment for the purpose of making a sale to the State Undercover Agent. Bishop agreed over the telephone to bring the marihuana to the apartment for the purpose of making a sale to the State Undercover Agent. Bishop agreed over the telephone to bring eight (8) lids of marihuana to the apartment and a short time later did arrive at the apartment with Michael Wayne Edens. The person who accompanied Bishop to the apartment made the sale of eight (8) plastic bags of marihuana to the State Agent for the price of $70.00. A State Agent also had a short discussion with Bishop with regard to automatic pistols. These activities are reflected on Pages 4, 5, and 6 of the Preliminary Hearing transcript."

harmless. It is readily apparent that the defendant was not prejudiced thereby: he received only the minimum sentence despite the overwhelming, uncontroverted evidence of his guilt. Compare *Wald v. State*, Okl. Cr., 513 P.2d 330 (1973), and *Boyle v. State*, Okl.Cr., 508 P.2d 1091 (1973).

In conclusion we observe the record is free of any error which would cause reversal or justify modification. The judgment and sentence is *AFFIRMED*.

CORNISH, P. J., and BRETT, J., concur.